United States Court of Appeals,

Fifth Circuit.

No. 95-50799.

In the Matter of SUPER VAN INC., Debtor,

SUPER VAN INC., Appellant,

v.

CITY OF SAN ANTONIO;  Anna Deosdade;  Richard Mendez;  Kevin Shirer, Appellees.

Aug. 27, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, DAVIS and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Super Van, Inc. (Super Van) appeals the grant of summary judgment against it on *res judicata* grounds.  We reverse and remand.

**Facts and Proceedings Below**

Defendant-appellee City of San Antonio (the City) regulates ground transportation[1] within its boundaries.  Plaintiff-appellant Super Van operated a ground transportation service in San Antonio.  In addition to private operations, in September 1988, Super Van was awarded an exclusive three-year contract, with an option to extend for up to two additional years, with the City (the Contract) to provide the Downtown Airport Limousine Service:  shuttle service between the airport and hotels within the city.

Super Van asserts causes of action for tortious interference with contract, fraud, malicious prosecution, abuse of process, breach of duty of good faith and fair dealing, invasion of privacy, and Section 1983 claims (based on asserted violations of the Due Process and Equal Protection Clauses).  These causes of action are based on allegations that the City and the individual defendants—Anna

---

[1]The City regulates all types of "for hire" ground transportation, including taxi, limousine, livery, shuttle, and charter services.

1

Deosdade (Deosdade), Richard Mendez (Mendez), and Kevin Shirer (Shirer)—have engaged in a series of ongoing and continuous activities with the purpose of putting Super Van out of business. For example, Super Van alleges that the City's ground transportation inspectors at the airport commenced a campaign of selective, discriminatory, and punitive enforcement of the City's shuttle regulations and the airport's own specific regulations against Super Van in the summer of 1988. Super Van claims that selective and discriminatory enforcement continued against its shuttle operations, even against its shuttle operations that are not subject to regulation.[2] Most of Super Van's factual claims can be grouped into several broad categories: (1) a bad faith 1990 change in the definition of "shuttle" under the City's ground transportation ordinance (CGTO) and refusal to amend that changed definition;[3] (2) pattern of bad faith citations issued to Super Van, its employees, and Rullo;[4] (3) bad faith attempts to interfere with Super Van's shuttle contracts;[5] and (4) bad faith

---

[2]Super Van provided ground transportation services to disabled individuals under a contract with Via Metropolitan Transit. Super Van alleges that these services are exempt from regulation.

[3]Super Van alleges that the City intentionally altered the definition of "shuttle" to make it more difficult for Super Van to operate its shuttle business. In 1989, the City redefined "shuttle" as a vehicle having a rated passenger capacity of more than seven. Relying on this amendment, Super Van purchased fifty eight-passengers vans to service the Contract at a price of approximately $900,000. According to Super Van, City staff secretly engineered a clandestine amendment altering the definition of shuttle to a vehicle having a rated passenger capacity of more than eight—just enough to preclude Super Van from being able to use its new inventory of vans. This January 11, 1990, amendment was allegedly reported by City staff to be merely a technical amendment, and no notice was given to Super Van, the City Council, or the general public that the rated passenger capacity in the definition was altered. After discovering that the shuttle definition had been altered, Super Van's president, Donald Rullo (Rullo), advised Deosdade that Super Van had ordered the fifty eight-passenger vehicles and intended to use them in its shuttle service and in servicing its Contract. He also asked Deosdade to advise the City Council that the definition of shuttle had been changed by the January 11, 1990, amendment and to begin the process of changing the definition back to the previous definition. According to Super Van, Deosdade refused to advise the City Council or to begin to modify the definition because she wanted to disrupt Super Van's business. Super Van also alleges that Deosdade met with other City staff, including staff outside of her department, on or about September 30, 1991, to adopt a uniform policy of opposing Super Van's use of the eight-passenger vehicles to service the Contract.

[4]Between August 8, 1991, and October 26, 1991, the City cited and/or removed Super Van's vehicles from service over thirty-five times for alleged defects and failures to comply with provisions of the CGTO. According to Super Van, the same standards were not uniformly applied to other ground transportation permit holders, and every one of the thirty-five citations was dismissed in 1992. Super Van alleges that these citations began after Rullo refused a

2

failure to comply with Contract provisions.[6]  As further evidence of the animosity between it (and Rullo) and the defendants-appellees, Super Van also alleges in its complaint that the City and the individual defendants engaged in bad faith dealings with it in its charter business.[7]

Super Van filed a petition for bankruptcy under Chapter 11 in November 1992.  On February 4, 1993, Super Van filed an adversary proceeding (the First Adversary Proceeding) in the bankruptcy court against the City, Deosdade, Mendez, and Shirer.  Super Van alleged four causes of action in the First Adversary Proceeding, all of which were centered around the City's failure to grant its application for a chapter permit and interference with its charter business.  During the First Adversary Proceeding, Super Van alleged that the City refused to grant its charter permit application, at least

solicitation of a bribe from Mendez.  In October, Super Van began using the new eight-passenger vans, along with its fifteen-passenger vehicles, in servicing the Contract.  In November and December, Super Van's drivers and license holder (Rullo) were issued over 300 citations for allegedly violating the CGTO.  Super Van asserts that all but 21 of these citations were eventually dismissed and that Rullo was named in 11 of the 21 remaining citations.  On September 18, 1992, Rullo was acquitted of the first of these criminal misdemeanor complaints in Municipal Court.  According to Super Van, the City intends in bad faith to continue prosecuting Rullo until it obtains three convictions, which would enable it to revoke Super Van's ground transportation permits.

[5]During December 1991, Super Van entered into several contractual agreements with hotels in San Antonio to provide contract transportation for their guests.  A similar service had allegedly been offered by one of Super Van's competitors for several years without challenge by the City, Deosdade, Mendez, or Shirer.  Super Van claims that, after learning of Super Van's hotel contracts, Deosdade offered and caused to be passed by the City Council an amendment to the CGTO—directly aimed at Super Van's activities—prohibiting such contracts.

[6]Super Van claims that the City unreasonably and in bad faith refused to timely consider and approve its July 24, 1990, request for fare increase under the Contract.  Because the City failed to consider the fare change, Super Van unilaterally increased its fare at some time prior to December 13, 1991.  The City notified Super Van, through a letter written by Mike Kutchins (Kutchins), that the increase in fare without City approval placed it in default under the Contract.  Nevertheless, in June 22, 1991, Super Van gave notice of its intent to exercise its option to renew the Contract for another year.  On February 6, 1992, the City terminated the Contract;  Super Van claims that the Contract was terminated because it was using the eight-passenger vehicles.  The City contracted with another firm (Star Shuttle) to provide the services formerly provided by Super Van under the Contract.  Star Shuttle was granted a permit to provide shuttle services, allegedly without following the procedural requirements set forth in the CGTO.  The City also allegedly granted Star Shuttle three fare changes in one year.

[7]In September 1992, the City amended the CGTO to regulate charter vehicles.  According to Super Van, the City and the individual defendants intentionally and in bad faith refused to grant it a charter permit and interfered with its lawful charter business.

3

in part, out of animosity toward Rullo. Super Van and the defendants-appellees agreed that there was a long history of animosity between the parties, and the parties presented conflicting reasons for the animosity. On February 18, 1993, as part of the First Adversary Proceeding, the bankruptcy court granted a temporary injunction against the City prohibiting it from preventing Super Van from operating its charter business. On June 8, 1993, while the First Adversary Proceeding was still pending and had not been tried, Super Van filed the instant suit as a second adversary proceeding in the bankruptcy court. This suit focuses on Super Van's complaints of interference with its shuttle business, and it relies on claims of long-term animosity between Super Van (and Rullo) and the defendants-appellees.

On September 15, 1993, during the pre-trial conference for the First Adversary Proceeding, the bankruptcy court *sua sponte* raised the issue of whether the First Adversary Proceeding and the instant suit should be consolidated. Super Van's counsel indicated that it preferred not to consolidate the cases, and the defendants-appellees' counsel stated that the defendants also preferred not to have the two actions consolidated.[8] Relying on both lawyers' arguments for maintaining separate suits, the bankruptcy court did not consolidate the First Adversary Proceeding and the instant suit.

On November 2, 1993, the bankruptcy court, following a bench trial, issued oral findings of fact and conclusions of law in the First Adversary Proceeding, holding that the City violated Super Van's constitutional rights in refusing to grant it a charter permit. Super Van was awarded actual damages and attorneys' fees of approximately $35,000,[9] plus post-judgment interest, in the First Adversary Proceeding. The defendants later asked the district court to withdraw the instant suit from

[8]Though the City and the individual defendants have different counsel on this appeal, they shared counsel in the First Adversary Proceeding. This counsel stated two reasons for preferring no consolidation: the defendants (1) did not want to confuse the issues because the First Adversary Proceeding "is one particular matter" while the instant suit involved many more issues and facts; and (2) were satisfied to leave the First Adversary Proceeding in bankruptcy court but wanted the instant suit to go before a jury because of the larger damages at stake.

[9]Super Van was awarded $10,003.54 for the loss of twelve specific charter contracts, as well as $25,000 for attorneys' fees and civil contempt sanctions for violating the automatic stay under 11 U.S.C. § 362(a)(6).

4

the bankruptcy court because it was a non-core jury proceeding, dealing with issues not related to the bankruptcy. On August 2, 1994, the district court withdrew the instant case from the bankruptcy court. The City and the individual defendants then filed separate motions for summary judgment.

On July 27, 1995, the district court granted summary judgment in favor of the City, holding that the First Adversary Proceeding was *res judicata* and barred the instant suit against the City. The district court ordered Super Van to file a supplemental response addressing the issue of whether the First Adversary Proceeding also barred the instant action against the individual defendants. On August 7, Super Van's motion for new trial, or in the alternative to alter or amend judgment, was filed. On August 18, 1995, after Super Van and the individual defendants addressed the issue of *res judicata* of the First Adversary Proceeding as applied to the individual defendants, the district court (1) granted summary judgment against Super Van as to the remaining defendants and dismissed the case, and (2) denied Super Van's motion for new trial, or in the alternative to alter or amend judgment. On August 28, 1995, Super Van filed a Second Motion for New Trial or in the alternative, to Alter or Amend Judgment and for Sanctions, which the district court denied on October 3, 1995. Super Van filed timely notice of appeal.

## Discussion

The district court held that the instant suit and the First Adversary Proceeding were both based on the same set of operative facts, that all of Super Van's claims were known to it at the time of its previous litigation, and that Super Van could and should have brought all of its claims in the First Adversary Proceeding.[10] Thus, it concluded that the instant suit was barred by *res judicata* as a matter of law and dismissed the suit on summary judgment motions. Super Van argues that (1) the First Adversary Proceeding and the instant suit are not based on the set of operative facts (i.e. cause of action), and (2) even if they are, *res judicata* does not bar the instant suit because the

---

[10]The district court's holding that Super Van could and should have brought the claims raised in the instant suit at the time of the First Adversary Proceeding is based on (1) Super Van's knowledge of the claims at the time of the First Adversary Proceeding, and (2) the fact that the claims arise from the same cause of action.

5

defendant-appellees acquiesced in the splitting of the claim. The appellees respond that the district court's ruling was correct and that they did not agree to the splitting of the claim.

*Res judicata,* also known as claim preclusion,[11] forecloses litigation of matters that (1) have previously been litigated, or (2) have never been litigated but should have been advanced in an earlier suit. *See Langston v. Ins. Co. of North America,* 827 F.2d 1044, 1046 (5th Cir.1987) (citation omitted); Charles A. Wright, *Federal Courts* § 100A, p. 722 (5th ed. 1994). This Circuit's test for claim preclusion requires that:

> "(1) The parties be identical in both suits, (2) A court of competent jurisdiction rendered the prior judgment, (3) There was a final judgment on the merits in the previous decision, and (4) The plaintiff raises the same cause of action or claim in both suits." *Matter of Howe,* 913 F.2d 1138, 1143-44 (5th Cir.1990) (footnote omitted).

In addition, we have recognized that claims that were not actually litigated are not barred unless they "could and should" have been brought in the earlier suit. *See id.* at 1145. The parties disagree about whether the fourth element of the above test is met—whether Super Van raises a different cause of action in the instant suit than in the First Adversary Proceeding—and whether, assuming the test was met, Super Van should have brought the non-charter-based claims in the First Adversary Proceeding. We hold that, even if the First Adversary Proceeding and the instant suit involve the same causes of action, the claim-splitting prohibition in *res judicata* does not bar the instant action because Super Van was excused from bringing its claims in a single suit.

A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim. *Clements v. Airport Authority of Washoe County,* 69 F.3d 321, 328 (9th Cir.1995) (quoting *Restatement (Second) Judgments* § 26 cmt. a). Thus, the *Restatement* recognizes that a second action may be brought by a plaintiff on the

---

[11]"As this Court has recognized, the doctrine of *res judicata,* in its broadest sense, encompasses two distinct preclusion concepts, claim preclusion (*res judicata* ) and issue preclusion (*collateral estoppel* ). "Unfortunately, the terminology used in this area of the law often breeds confusion.' " *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is OPS,* 24 F.3d 743, 746 (5th Cir.1994) (citation omitted), *cert. denied,* --- U.S. ----, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995). The district court rested its summary judgment on claim preclusion, using the older label of *res judicata.*

same cause of action if "the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein." *Restatement (Second) Judgments* § 26(1)(a). Other Circuits have adopted this provision of the *Restatement. E.g., Clements,* 69 F.3d at 328; *Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 985 F.2d 27, 31 (1st Cir.) (describing the above-quoted provision as "general law on the subject"), *cert. denied,* 509 U.S. 907, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993); *Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir.), *cert. denied,* 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990); *Torres v. Rebarchak,* 814 F.2d 1219, 1225 n. 4 (7th Cir.1987). A contrary rule, o ne imposing *res judicata* despite a defendant's agreement or acquiescence in the splitting of the claim, would encourage litigants to engage in dishonest (or at least less than forthright) behavior to gain tactical advantage. Because it is consistent with the purpose of *res judicata,* and in order to discourage unsavory tactical maneuvers, we join the First, Fourth, Seventh, and Ninth Circuits in adopting Section 26(1)(a) of the *Restatement.*

The City argues, however, that it did not "request, agree[, or] stipulat[e] ... that the two proceedings be tried separately or together." It goes on to argue that it had no duty to inform Super Van of the *res judicata* effects of failing to consolidate the suits. According to the *Restatement,* however,

> "[w]here the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." *Restatement (Second) Judgments* § 26, cmt. a; *see Clements,* 69 F.3d at 328 n. 6 (quoting the comment language with approval).

Despite being fully informed and having ample opportunity to do so, none of the defendants objected to the splitting of the claims. In fact, they, through counsel, actually stated a preference for the splitting. Therefore, we hold that the defendants acquiesced in the splitting of the claims. Because they acquiesced in the splitting of the claims, we hold that the district court erred in holding that the

7

instant suit is barred by *res judicata.*[12]

## Conclusion

For the foregoing reasons, we REVERSE and REMAND for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[12]We reject defendants' contention that plaintiff may not avoid the bar of *res judicata* on the basis of defendants' acquiescence, absent plaintiff's having produced affirmative evidence, apart from the above described circumstances, of specific reliance by plaintiff on that acquiescence.

Finally, we note that, at oral argument, the City suggested that the issues raised in the instant suit actually were litigated in the First Adversary Proceeding—as opposed to "could and should" have been litigated. The defendants-appellees did not raise this issue in their briefs, and it was not the basis of the district court's ruling. Our review of the record reveals that all of the issues raised in the instant suit were certainly not litigated in the First Adversary Proceeding, and that it is likely that only charter-based claims were litigated in the First Adversary Proceeding. And defendants-appellees' counsel in the First Adversary Proceeding suggested during closing argument that the shuttle-related issues had not been litigated: "We have, from time to time, delved somewhat into the history of the relationship between Super Van and the City as it relates to shuttle vehicles, but my understanding of the operative facts that give rise to this present lawsuit relate strictly to the denial of the charter permit." We do not, however, preclude the district court from considering this issue more closely on remand.