# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 1, 2022

Lyle W. Cayce
Clerk

No. 21-40383

---

THE BANK OF NEW YORK MELLON, *formerly known as* THE BANK OF NEW YORK AS TRUSTEE OF THE REGISTERED HOLDERS OF CWABS, INCORPORATED, ASSET-BACKED CERTIFICATES, SERIES 2004-5,

*Plaintiff—Appellee*,

*versus*

FLOYD RILEY; SONIA RILEY,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:19-CV-279

---

Before JONES, SOUTHWICK, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

The Bank of New York Mellon sued Floyd and Sonia Riley after the Rileys allegedly failed to abide by a settlement agreement that arose out of a

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

foreclosure proceeding. The district court granted summary judgment in favor of the Bank, and the Rileys appeal. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2004, Floyd and Sonia Riley borrowed $104,000 from the Bank of New York Mellon ("the Bank") to refinance real property in Beaumont, Texas. They executed a promissory note and deed of trust that pledged the Beaumont property as collateral for the loan. In 2010, the Rileys stopped making required payments on their loan, and the Bank filed an application to initiate foreclosure proceedings. On July 24, 2013, a Texas state court issued an order that allowed the Bank to proceed with foreclosure.

In 2014, the Rileys sued the Bank in state court to challenge the 2013 foreclosure order. The lawsuit was resolved in 2016 through a settlement agreement. As part of the settlement agreement, the Rileys agreed to the Bank "proceeding with a consent or non-judicial foreclosure" and to "waive any and all rights and defenses they may have to challenge or contest said foreclosure including, but not limited to, any claims or defenses contesting their default under the Note or Deed of Trust or contesting the validity of the foreclosure process or sale." The lawsuit was dismissed. The Bank then filed for an expedited foreclosure proceeding under Texas Rule of Civil Procedure 736 to obtain a current court order for non-judicial foreclosure as required by the Texas Constitution. *See* TEX. CONST. art. XVI, § 50(a)(6)(D). The Rileys filed an answer to the Bank's expedited foreclosure application that denied the allegations in the application and asserted various defenses.

The state court conducted a hearing on the Bank's foreclosure application. The court denied the Bank's application because the court found there were contested facts at issue and found a traditional lawsuit would be necessary to obtain foreclosure. So, in 2018, the Bank filed a lawsuit

seeking foreclosure. The only relief the Bank sought was foreclosure of the Riley's deed of trust. The Bank later explained that the counsel that pursued this lawsuit was unaware of the 2016 settlement agreement when advancing this suit. The Rileys did not identify the existence of the settlement agreement during this lawsuit's proceedings either.

The state court granted summary judgment for the Rileys in the 2018 lawsuit on the basis that the Bank's claim was barred by the statute of limitations. The Bank appealed this ruling to the Texas Court of Appeals and that court reversed, holding there were issues of material fact as to whether its claim was outside the statute of limitations. The case was then placed in abeyance pending the resolution of the case that is now before us on this appeal.

In 2019, the Bank filed this case in the United States District Court, Eastern District of Texas while state court proceedings were ongoing. In its complaint, the Bank alleged the Rileys breached the 2016 settlement agreement, defrauded the Bank, engaged in negligent misrepresentation, and that the Bank was entitled to return of its settlement payment. All of the Bank's claims were based on the Rileys' alleged breach of the settlement agreement, specifically that they attempted to prevent foreclosure and in asserting defenses against the Bank after it filed for foreclosure in state court in 2016.

The district court granted summary judgment to the Bank on its claim that the Rileys breached the settlement agreement. The Bank then moved for partial dismissal of its remaining causes of action. The district court dismissed those claims. The district court then entered final judgment, which authorized the Bank to foreclose on the Rileys' lien. The Rileys timely appealed.

No. 21-40383

## DISCUSSION

The Rileys, who are *pro se* on this appeal as they also were in district court, make numerous arguments for reversal. We consider the jurisdictional arguments first, then we will analyze the remainder.

### I.    *Standing*

The Rileys argue that the district court erred in finding that the Bank had standing. "Standing is a question of law that we review *de novo*." *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018). A federal courts' jurisdiction extends only to actual "cases or controversies." *Whitemore v. Arkansas*, 495 U.S. 149, 154–55 (1990). To establish standing, the plaintiff must show he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

The Rileys first argue the Bank has not shown it suffered an injury in fact. The Rileys rely on a state court order that the Bank received in 2017 that recognized its right to foreclose. That order, though, became ineffective because the court held on reconsideration that the Rileys had not received proper notice of the hearing that had led to that order. Even if, as alleged by the Rileys, there were defects in the vacating of the 2017 order that might make it still in effect, the issue in the case here is whether the Bank suffered an economic injury when the Rileys breached the 2016 settlement agreement. We hold that it did, as that breach deprived the Bank of the "benefit of the bargain" it was due as a result of making the agreement to settle the 2014 lawsuit. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). Plaintiffs seeking recovery for "actual economic harm (*e.g.*, overpayment,

4

No. 21-40383

loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain" is a sufficient injury for standing. *Id.*

The Rileys further argue the Bank had no injury because it never actually paid the Rileys anything for the settlement agreement. The Bank's general allegations of injury sufficed. The argument also fails as a reason to have granted summary judgment to the Bank. Their answer admitted that the Bank paid them their contractually entitled sum. Such "factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). The district court therefore did not err in its conclusion that all parties agree the Bank tendered performance, and therefore the Bank could establish injury.

The district court did not err in finding the Bank sufficiently established standing.

## II.    *Diversity Jurisdiction*

The Rileys argue that the Bank failed to establish diversity jurisdiction because its damages did not exceed $75,000. District courts have diversity-of-citizenship jurisdiction when a lawsuit involves citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The party seeking to invoke federal diversity jurisdiction has the burden to establish both of those requirements. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). "Where the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (1995). When a specific sum is alleged, a court may only dismiss for jurisdiction if "it . . . appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288

5

(1938)).  If the plaintiff fails to specify damages, the party seeking federal jurisdiction must show by a preponderance of the evidence the amount-in-controversy requirement is satisfied.  *Id.*

Here, the Bank identifies a specific amount, stating it "seeks damages greater than $150,000."  The Rileys contend, though, that the Bank is only entitled to the amount it paid in settlement, which does not exceed $75,000; and therefore, the Bank cannot meet the amount-in-controversy requirement.  The Bank responds that it is entitled to damages that account for "the benefit of the bargain" in the settlement agreement, which would also include the value of the Beaumont property and thus reach the $150,000 claimed in its complaint.

The law governing which damages are recoverable is substantive, so we apply Texas law.  *See Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013).  "Benefit of the bargain damages are the very essence of a breach of contract action and are recoverable under [] Texas . . . contract law."  *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 453 (5th Cir. 2001).  Such damages are intended to "place the injured party as nearly as possible in the position that he would have occupied had the defaulting party performed the contract."  *Id.* at 454.

In this case, the contract stipulated that the Rileys were to turn over the property to the Bank.  Accordingly, the benefit-of-the-bargain damages includes the value of the property because the value of the property captures the expected value of the contract.  *See, e.g.*, *Bowen v. Robinson*, 227 S.W.3d 86, 97–98 (Tex. App.—Hous. [1st Dist.] 2006, pet. denied).  The district court found the value of the property was $159,580.00 in 2019.  Therefore, in breaching the contract, the Bank was denied a benefit of the bargain that exceeded the requisite amount in controversy, $75,000.  The district court

therefore did not err in concluding the Bank established diversity of citizenship jurisdiction.

### III.    *Res Judicata — Claim Splitting*

The Rileys next raise a *res judicata* argument.  They argued on summary judgment and again on appeal that the Bank should not be granted summary judgment because it lacks subject-matter jurisdiction.  Specifically, the Rileys argue that the Bank improperly split its claims between the 2018 state lawsuit and the 2019 federal lawsuit.

The prohibition on claim splitting is a principle based in *res judicata*. *In re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).  Whether a claim is barred by *res judicata* is a question of law reviewed *de novo.  See Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).  Claim splitting occurs when a plaintiff splits "a single cause of action or claim" by "advancing one part in an initial suit and attempting to reserve another part for a later suit."  *Texas Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 501 (5th Cir. 1988) (en banc).  The purpose behind the claim-splitting rule "is to protect the defendant from being harassed by repetitive actions based on the same claim."  *In re Super Van Inc.*, 92 F.3d at 371.  A plaintiff therefore can only bring a second action on the same cause of action if the parties have agreed to the plaintiff splitting its claims.  *Id.*

To determine whether two claims constitute the same claim or cause of action, we apply the "transactional test."  *Ocean Drilling & Expl. Co., Inc. v. Mont Boat Rental Servs., Inc.*, 799 F.2d 213, 217 (5th Cir. 1986).  The critical question in applying the transactional test is "whether the two actions were based on the same nucleus of operative facts."  *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992) (quotation marks and citations omitted); *see also Jackson v. U.S. Postal Serv.*, 799 F.2d 1018, 1021 (5th Cir. 1986) (applying transactional test in claim-splitting analysis).  This means we evaluate the

"factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies." *Eubanks*, 977 F.2d at 171.

For example, in *Jackson* we held that an action for ejectment and an action to recover reasonable rental value constituted the same claim because "the wrong to be corrected" was the same in both actions. *Jackson*, 799 F.2d at 1021. The *Jackson* plaintiffs first sued the United States Postal Service ("USPS") to retake post office premises after the USPS breached its lease. *Id.* at 1019–20. The plaintiffs later sued the USPS to recover reasonable rental value for the period of nonpayment. *Id.* The court explained that despite the plaintiffs seeking different remedies, the "wrong to be corrected" was the same in both suits and therefore both claims "arose from the same 'series of connected transactions.'" *Id.* at 1021 (quoting Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982)). The claims could therefore not be split into two actions. *Id.*

Unlike the plaintiffs in *Jackson*, the Bank's two suits involve different wrongs. The central transaction in the first suit was related to the Rileys' deed of trust and the Bank's efforts to enforce that deed of trust and foreclose on the Beaumont property. The second action, on the other hand, involved a different transaction, as it focused on a settlement agreement between the parties and the Rileys' subsequent breach of that agreement. There are two different legal wrongs underlying each of these occurrences — failure to make required payments on a loan and breach of a contract — and under the transactional test, two claims have the same identity only where the same transaction is the source of the claim in both suits. *See In re Howe*, 913 F.2d 1138, 1144-45 (5th Cir. 1990). The two claims here thus cannot be considered the same. The Bank therefore did not engage in improper claim splitting when bringing two separate suits.

No. 21-40383

## IV.    Summary Judgment

The Rileys next challenge the district court's grant of summary judgment. "We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court." *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review all facts "in the light most favorable to the non-movant." *Price v. Fed. Express Corp.*, 283 F.3d 715, 719 (5th Cir. 2002).

The Rileys argue material issues of fact remain as to the meaning of the settlement agreement. Specifically, they say the contract's language was ambiguous as to whether the Bank could proceed with any type of foreclosure or whether it could only execute a non-judicial foreclosure and as to whether the Bank could attempt to foreclose multiple times. They derive these arguments from the following section of the settlement agreement:

> Plaintiffs hereby consent to Defendants . . . proceeding with a consent or non-judicial foreclosure. Plaintiffs expressly waive any and all rights and defenses they may have to challenge or contest said foreclosure including, but not limited to, any claims or defenses contesting their default under the Note or Deed of Trust or contesting the validity of the foreclosure process or sale.

Interpreting a contract is a legal issue, which means our review of a district court's interpretation is *de novo*. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). In a diversity case, we apply state law for the principles of contract interpretation. *See id.*

Under Texas law, "[w]hether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650

S.W.2d 391, 394 (Tex. 1983).  When interpreting a contract, "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Id.* at 393.  All parts of the contract should be read together and "such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties." *Great Am. Indem. Co. v. Pepper*, 339 S.W.2d 660, 661 (1960).  Terms in the contract are given their "plain grammatical meaning" unless such meaning would plainly defeat the parties' intentions.  *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

Texas courts consider a contract ambiguous where "it is reasonably susceptible to more than one meaning, in the light of the surrounding circumstances and after applying established rules of construction." *Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982).  "An ambiguity does not arise simply because the parties offer conflicting interpretations." *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  Whether a contract is ambiguous is a question of law for the court to decide. *Coker*, 650 S.W.2d at 393. If the contract is ambiguous, then the district court cannot grant summary judgment and the interpretation of the contract becomes a fact issue. *Id.*

The language identified by the Rileys unambiguously reads as contemplating that the Bank would proceed with one of two types of foreclosures, either a consent foreclosure or a nonjudicial foreclosure. Moreover, the intent of the agreement was for the Rileys to turn over the property to the Bank upon payment of the agreed sum.  That intent was exemplified in the provision the Rileys identify that shows they agreed not to contest foreclosure or interfere with proceedings.  Reading the contract as a whole, and especially considering this underlying intent, its meaning is not ambiguous as to whether the Bank may obtain either of the two types of foreclosures listed and should be able to obtain foreclosure as a result of the

agreement.   The district court therefore did not err in granting summary judgment to the Bank.

## V.     Due Process

Finally, the Rileys argue the district court denied them due process of law as guaranteed by the Fourteenth Amendment.   The denial allegedly occurred when the district court denied the Rileys' motion to compel a deposition of the Bank's corporate representative.   The district court denied this request because the Rileys failed to comply with the requirement in the discovery rules to "describe with reasonable particularity the matters for examination" for requesting to depose a corporation.   FED. R. CIV. P. 30(b)(6).

We review a district court's ruling on discovery matters, such as a motion to compel, for abuse of discretion.   *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 147 (5th Cir. 1996).   A district court abuses its discretion if it bases its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."   *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163 (5th Cir. 1994).

In their motion to compel, the Rileys failed to explain the matters to be examined in a deposition of the Bank's corporate representative.   Instead, the request was made summarily at the conclusion of a motion to compel that was primarily about compelling interrogatories.   Rule 30(b)(6) governs deposing corporations, and that is the discovery the Rileys were seeking.   The Rileys say they were seeking to depose a person, not a corporation, and therefore did not need to provide a particularized reason for the deposition. It is correct that if their motion had been granted, they would be deposing a person, but they requested to depose someone who represents the Bank — a corporation.   This request fits squarely within Rule 30(b)(6)'s scope.   The

district court therefore did not abuse its discretion in denying the Riley's motion to compel.

As for the Rileys' due process argument, "[a] summary judgment reached in accordance with Federal Rule of Civil Procedure 56 . . . satisfies the requirements of due process." *Hill v. McDermott, Inc.*, 827 F.2d 1040, 1044 (5th Cir. 1987). Rule 56 does not require that discovery occur at all before summary judgment is granted. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990). If a party cannot defend the motion sufficiently without discovery, the party must turn to Federal Rule of Civil Procedure 56(d) as a remedy to be able to proceed with discovery. *See id.* Rule 56(d) allows a party to file affidavits to show why discovery is essential to its opposition to the summary judgment motion. The court may still deny the motion, but Rule 56(d) serves as a procedural safeguard for parties who believe they cannot sufficiently defend a summary judgment motion. *American Fam. Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 893–94 (5th Cir. 2013).

The Rileys did not file any motion that we could construe as attempting to show as a Rule 56(d) motion. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (explaining we liberally construe *pro se* parties' arguments). "[O]ne who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process." *Browning v. City of Odessa*, 990 F.2d 842, 845 n.7 (5th Cir. 1993). The Rileys failed to take advantage of such procedural safeguards. For this reason and the fact that the district court did not err in denying their discovery motion, the district court did not violate the Rileys' due process rights.

AFFIRMED.