IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3433

_____

B.R. EUBANKS, M.D. and
BONNIE B. EUBANKS,

                    Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION
as Receiver for FIRST CITY BANK,
New Orleans, Louisiana and
FIRST NATIONAL BANK OF JEFFERSON,

                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(August 20, 1992)

Before BROWN, KING and WIENER, Circuit Judges.

KING, Circuit Judge:

Dr. and Mrs. B.R. Eubanks appeal from a judgment of the district court granting summary judgment in favor of First City Bank ("First City") and First National Bank of Jefferson ("FNJ") (collectively, the "Banks") on grounds of res judicata and judicial estoppel. We affirm the judgment below on the ground of res judicata.

## I.  FACTS AND PROCEDURAL HISTORY

In 1983, Dr. Eubanks invested in a partnership in commendam that was to convert an apartment building in New Orleans into

condominium units (the "Project").  First City made a loan to Dr. Eubanks and the other partners to purchase and convert the units. Shortly thereafter, the Project failed and First City brought suit against Dr. Eubanks and others in state court.  The state court proceeding resulted in a foreclosure sale, at which First City acquired ownership of the Project.

In September 1985, Dr. Eubanks purchased the Project from First City for the balance due on the debt and received an assignment of First City's deficiency judgment rights against Dr. Eubanks' co-obligors on the debt.  The Project subsequently failed again, and in August 1986, Dr. Eubanks and his wife filed a petition for bankruptcy under chapter 11 of the Bankruptcy Code.

The Eubankses' Fourth Amended Plan (the "Plan"), filed July 14, 1989, was confirmed by the bankruptcy court on February 15, 1990, and the bankruptcy court's confirmation order was affirmed by the district court on August 28, 1990.  On February 12, 1990, three days prior to confirmation of the Plan, Dr. Eubanks filed suit in federal district court against First City, alleging lender liability and violation of the Racketeer Influenced Corrupt Organization Act ("RICO").  Dr. Eubanks later voluntarily dismissed that suit pursuant to Federal Rule of Civil Procedure 41.  On August 21, 1990, six months after confirmation of the Plan, the Eubankses filed in bankruptcy court an objection to the claim of First City, citing the complaint in the dismissed suit as the basis of the objection.

The Eubankses then filed the instant action in Louisiana state court, adding FNJ as a co-defendant. We address the allegations in the state complaint in some detail. First, the Eubankses claimed that there was a substantial identity of management and ownership of both banks. Dr. Eubanks was approached by an officer of First City who proposed that Dr. Eubanks purchase an interest in the Project. According to Eubanks, the officer represented to him, "with the knowledge, consent and approval of the executive officers of both First City and FNJ," that the Project was a sound investment, that it would be conceptualized, implemented, and partially financed by general partners, other First City and FNJ customers, who had considerable expertise in condominium conversion, that financing would be provided by First City and/or FNJ, and that the Banks held considerable security for the various loans involved in financing the Project. Eubanks also claimed that the officer informed him that his involvement in the Project was primarily "window dressing" for the federal banking regulators, and that unless he participated, the Project would not go forward. Based upon these representations, claimed Eubanks, he agreed to participate in the Project as one of the general partners and thus become fully liable for the parnership debt to First City.

After signing the promissory note to fund the Project, Eubanks became aware that the situation was not as represented. He alleged that First City, prior to his involvement in the Project, had already committed to provide funds for the Project

3

regardless of Eubanks' participation, and that the other general partners, represented by First City and FNJ to be experts, were neither experienced with condominium conversion nor in financially sound condition. Further, Eubanks learned that funds that should have been expended on the Project were being diverted into other condominium projects by the general partners, and that First City had mortgages on all of these other projects. Eubanks also learned that First City did not have the security interests in the property it claimed prior to obtaining his signature, and that "the only real security for the repayment of the loan obligation to First City was the personal obligation and guarantee of Eubanks." Based upon these alleged misrepresentations, the Eubankses claimed that First City and FNJ violated the Louisiana Blue Sky Law, La. Rev. Stat. 51:701, et seq., breached their fiduciary duties toward him, committed fraud, and breached the loan contract.

The Banks removed this action on December 14, 1990, alleging removal jurisdiction under 28 U.S.C. §§ 1452(a) and 1441(b).[1] The district court subsequently dismissed the Eubankses' claims against the Banks, reasoning that the Eubankses knew of the claims prior to the bankrupcty proceeding, and should have addressed their claims against First City and FNJ in their

_____

[1] On February 6, 1991, the Banks filed a complaint in federal district court seeking a declaration that the Eubankses were barred from proceeding with the instant action based upon the order confirming their Plan. The record is unclear as to the disposition of this action.

4

disclosure statements and in the Plan.[2]  Based upon their failure

to bring the claims in the bankruptcy court, the district court

held that the Eubankses were barred by the doctrines of res

judicata and judicial estoppel from raising the claims in the

instant case.  The Eubankses now appeal the district court's

dismissal of their action against the Banks.

## II. DISCUSSION

The Eubankses contend that the district court improperly

applied the doctrine of res judicata to their claims against the

Banks.  Application of the doctrine is proper only if the

---

[2] Section 521(1) of the Bankruptcy Code requires the debtor
to "file a . . . schedule of assets and liabilities . . . and a
statement of the debtor's financial affairs . . . ."  The debtor
is also required, pursuant to Bankruptcy Rule 1007(b)(1), Form
No. 6, Schedule B-2, to disclose contingent and unliquidated
claims "of every nature, including counterclaims of the debtor."
Section 1125(b) mandates the filing of a "written disclosure
statement approved, after notice and a hearing, by the court as
containing adequate information."  "Adequate information" is
defined as

> information of a kind, and in sufficient detail, as far
> as is reasonably practicable in light of the nature and
> history of the debtor and the condition of the debtor's
> books and records, that would enable a hypothetical
> reasonable investor typical of holders of claims or
> interests of the relevant class to make an informed
> judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); see also Sure-Snap Corp. v. State Street
Bank & Trust, 948 F.2d 869, 873 (2d Cir. 1991).  A determination
as to the adequacy of the contents of a disclosure statement
necessarily depends upon the facts and circumstances of each
case.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848
F.2d 414, 417 (3d Cir.), cert. denied, 488 U.S. 967 (1988); 5
Collier on Bankruptcy ¶ 1125.03[1] (15th ed. 1992).  Adequate
information may include the disclosure of any litigation likely
to arise in a non-bankruptcy context.  See Oneida, 848 F.2d at
417; Monroe County Oil Co. v. Amoco Oil Co., 75 B.R. 158 (S.D.
Ind. 1987).

following four requirements are met: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. See Nilsen v. City of Moss Point, 701 F.2d 556, 559 (5th Cir. 1983) (en banc); Russell v. SunAmerica Securities, Inc., 962 F.2d 1169 (5th Cir. 1992); Meza v. General Battery Corp., 908 F.2d 1262, 1265 (5th Cir. 1990). This four-part test has been applied in the bankruptcy context of an order confirming a plan of reorganization. See Howe v. Vaughn, 913 F.2d 1138, 1143 (5th Cir. 1990); Republic Supply Co. v. Shoaf, 815 F.2d 1046, 1053 (5th Cir. 1987).

The first element of this test is clearly satisfied here. While the Eubankses argue that the addition of Mrs. Eubanks changes the parties, Mrs. Eubanks' claims against the Banks derive exclusively from Dr. Eubanks' loan transactions with the Banks. As such, Mrs. Eubanks' addition as a plaintiff does not alter the identity of the parties. As to the second element, the Eubankses do not dispute the jurisdiction of the bankruptcy court which oversaw their estate and confirmed the Plan.

The Eubankses contest the third element -- that there must be a final judgment on the merits in the previous case -- arguing that there has never been a final judgment. We disagree. It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes.

6

See Stoll v. Gottlieb, 305 U.S. 165, 170-71 (1938); Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir. 1972) ("[a]n arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court") (citing In re Constructors of Florida, Inc., 349 F.2d 595, 599 (5th Cir. 1965), cert. denied sub nom. Coral Gables First Nat'l Bank v. American Surety Co., 383 U.S. 912 (1966)); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir.), cert. denied, 111 S. Ct. 387 (1990); see also Shoaf, 815 F.2d at 1053.  Section 1141(a) of the Bankruptcy Code clearly provides that all parties to a confirmed plan are bound by its terms:

> (a) . . . [T]he provisions of a confirmed plan bind the debtor . . . and any creditor, . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan.

11 U.S.C. § 1141(a).  One commentator has explained the res judicata consequences of § 1141(a) as follows:

> Section 1141(a) of the Code has the same effect as Sections 224(1), 367(1) and 473(1) of the Bankruptcy Act in that a plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are res judicata.  While section 1141(a) is more narrowly drafted than the correlative sections of the Bankruptcy Act, the effect is the same.  Subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan.

5 Collier on Bankruptcy ¶ 1141.01[1] (15th ed. 1992) (footnotes omitted); see J. Stephen Gilbert, "Substantive Consolidation in

Bankruptcy:  A Primer," 43 <u>Vand. L. Rev.</u> 207, 239 (1990) ("Like final judgments, confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by res judicata.").[3]  There is little doubt that the bankruptcy court's confirmation order is binding and final, and we accord it the weight of a final judgment for res judicata purposes.

Finally, the Eubankses argue that there is no identity of claims.  To determine whether the same claim is involved in two actions, we apply the transactional test of the <u>Restatement (Second) of Torts</u> § 24.  <u>Ocean Drilling & Exploration Co. v. Mont Boat Rental Servs., Inc.</u>, 799 F.2d 213, 217 (5th Cir. 1986); <u>Southmark Properties v. Charles House Corp.</u>, 742 F.2d 862, 869 (5th Cir. 1984) (where court approved agreement and settlement that a mortgagee could purchase the sole asset of a corporation in reorganization proceedings for the unpaid balance on its claim, res judicata barred a subsequent action arising from same transaction, in which debtor asserted that mortgagee had acted improperly in acquiring title to the asset); <u>see also</u> <u>Lane v. Peterson</u>, 899 F.2d 737, 742-44 (8th Cir.) (adopting transactional test), <u>cert. denied</u>, 111 S.Ct. 74 (1990); <u>In re Energy Co-op</u>, 814 F.2d 1226, 1230-31 (7th Cir.) (same), <u>cert. denied</u>, 484 U.S. 928 (1987).  Under this approach, the critical issue is whether the

---

[3] Section 1141(a) does not act as a bar to claims that arise after confirmation of the plan.  <u>See</u> 5 <u>Collier on Bankruptcy</u> ¶ 1141.01[1] (15th ed. 1992).  Here, the Banks allege, and the Eubankses concede, that the instant claims arose prior to confirmation of the Plan.

two actions were based on the "same nucleus of operative facts." Howe, 913 F.2d at 1144-45; In re Air Crash at Dallas/Ft. Worth Airport, 861 F.2d 814, 816 (5th Cir.1988). In this inquiry, we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies. See Nilsen, 701 F.2d at 564 ("a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit"); see also Alexander v. Chicago Park Dist., 773 F.2d 850, 854 (7th Cir.) ("mere change in legal theory does not create a new cause of action" for res judicata purposes), cert. denied, 475 U.S. 1095 (1985); In re Hoffman, 99 B.R. 929, 937 (N.D. Iowa 1989); In re Galerie des Monnaies of Geneva, Ltd., 55 B.R. 253, 257 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986).

We agree with the district court that the claims in the instant case are identical. In a case quite similar to the one at bar, the Second Circuit recently found an identity of claims between a confirmation order and a later lender liability action based upon conduct which allegedly contributed to the bankruptcy. In Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869 (2d Cir. 1991), two banks agreed to finance the debtor, Sure-Snap, and in return took a mortgage on the owner's real estate and a security interest in the equipment. Though Sure-Snap was not in default, the banks subsequently terminated the loan, and Sure-Snap filed for protection under chapter 11. A disclosure statement filed on behalf of Sure-Snap faulted one of the banks

9

for forcing it into bankruptcy.  This mention of the bank's fault was later omitted at the request of the bank.  Prior to the confirmation hearing, the debtor-in-possession initiated an adversary proceeding against the banks, challenging the validity of the liens on grounds that did not involve any lender liability.  The validity of the liens was upheld and the plan was later confirmed over the banks' objections.  At the time of the confirmation hearing, no lender liability claims were alleged against either bank, although records which were later discovered indicated that the debtor-in-possession was well-aware of potential claims prior to confirmation.  One year after confirmation, the debtor brought the lender liability claims in federal district court.

The district court held that the claims were barred by res judicata, and the court of appeals affirmed.  Id. at 877.  In addressing whether the case before it presented an identity of claims, the court referred to the adversary proceeding regarding the validity of the liens, but found it to be of little relevance to its res judicata analysis, noting that the narrowly drawn adversary proceeding "was not of the scope that would have precluded the bringing of the lender liability action."  Id. at 874.  Rather, the confirmed plan, and not the adversary proceeding, was the prior determination that precluded the later suit.  Id.  According to the Second Circuit, "[t]he formal bankruptcy hearing, confirming as it did Sure-Snap's plan for reorganization and schedule of repayment, did necessitate

10

preclusion of the lender liability action, as the claims premising Sure-Snaps petition for reorganization, and those alleging predatory banking practices, were integrally related." Id. "[I]t is evident," continued the court, "that the focus of contention and the basis for scheduling in the hearing encompassed the entire lender-debtor relationship . . . [including] the early calling of the loan." Id. As further evidence of the inter-relationship of the two proceedings, the court noted that the debtor admitted in its brief that the banks' post-loan conduct forced the debtor into bankruptcy: "because the lender liability claims would be misleading if alleged in a vacuum -- devoid of the financial atmosphere which prompted Sure-Snap to file for bankruptcy -- the tortious conduct action should not be heard separate and apart from the original bankruptcy proceeding." Id. at 875. The court accordingly held that the claims were identical because, for res judicata purposes, the same cause of action includes "'all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction.'" Id. (citing Nilsen, 701 F.2d at 560 n.4).

We note that the loan transaction at the heart of the instant litigation was also the source of First City's claim against the Eubankses' estate, a claim which was uncontested and fully allowed as one of the provisions in the Plan. As did the debtor in Sure-Snap, the Eubankses alleged in their petition that the foreclosure of the Project forced them into bankruptcy. See also Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d

11

414, 419 n. 5 (3d Cir.) ("Since it is Oneida's threshold allegation that the bank's activity in connection with the lending agreements was the catalyst to Oneida's filing a Chapter 11 petition, we are unpersuaded by Oneida's current position that the [former and instant] actions represent unrelated events."), cert. denied, 488 U.S. 967 (1988). In this case, all of the Eubankses' claims in this lender liability action are based on the same transaction that gave rise, in part, to the terms of the Plan, and the order confirming the Plan was based, in part, on the transaction at the core of the instant action. Cf. Justice Oaks II, 898 F.2d at 1551. Put another way, the Eubankses' instant complaint, alleging various counts of lender liability, puts into issue the same facts which would determine, inter alia, the treatment and amount of the debt owed to First City. See In re Hoffman, 99 B.R. at 937. Accordingly, there is an identity of claims between the confirmation proceeding and this lender liability suit.

Even where there is an identity of claims, the doctrine of res judicata does not bar the second action unless the plaintiff could or should have brought its claim in the former proceeding. Howe, 913 F.2d at 1145; see Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597 (1948) ("Under th[e] rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial."); Cromwell v. County of Sac, 94 U.S. 351, 352 (1876) (res judicata binds parties to a suit "not

12

only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose"); Howe, 913 F.2d at 1145 ("The law of this circuit is well-settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are res judicata.") (emphasis in original); D-I Enterprises, Inc. v. Commercial State Bank, 864 F.2d 36, 38 (5th Cir. 1989). As we stated in Miller v. Meinhard-Commercial Corp., "any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine res judicata." 462 F.2d at 360 (emphasis added, citations omitted). It is uncontested that the Eubankses' lender liability claims were not raised in the confirmation proceeding. Our inquiry therefore focuses on whether the Eubankses could or should have raised the claims in that proceeding.

Our recent decision in Howe is instructive as to whether claims such as those at bar could have been raised in a prior confirmation proceeding. 913 F.2d 1138. In Howe, the creditor bank filed a proof of claim based on two promissory notes secured by mortgages covering the debtors' house and farm. In response, the debtors filed adversary proceedings seeking to invalidate the mortgages and contending that the interest charged on the loans was usurious. Following extensive negotiations, the parties settled their differences and ironed out a plan. Five years

13

after confirmation of the plan, the debtors brought a lender liability action against the bank. The specific lender liability claims filed post-confirmation were not scheduled as assets of the estate or disclosed or treated in the plan. Instead, the indebtedness to the creditor bank was treated in the plan as an allowed secured claim, partially secured and partially unsecured. Id. at 1140-41.

The bankruptcy court dismissed the lender liability claims based on res judicata, and the district court affirmed. The debtors appealed, arguing that there was no identity of claims between the treatment of the bank in the plan and the lender liability claims they currently pursued. We disagreed, and affirmed the judgment below. Id. at 1149. Res judicata, we noted, "bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated." Id. at 1144 (emphasis in original) (quoting Nilsen, 701 F.2d at 560). Applying the transactional test, we noted that the loan transaction at the heart of the new litigation was also the source of the bank's original claim against the estate. Id. As evidence of whether the debtors could have brought the lender liability claims in the earlier proceeding, we noted that the debtors had disclosed and treated the bank in their confirmed plan, instituted adversary proceedings contesting different aspects of the loan transaction, and extensively negotiated

14

various aspects of the loan with the bank in formulating the plan. Id. at 1146. Accordingly, we held that

> when a confirmed plan discloses and specifically treats the creditor's claim, and the debtor has had a full opportunity to contest the creditor's claim in an adversary proceeding that is, in effect, settled in the plan, the debtor cannot collaterally attack the bankruptcy court's decision five years later in an action based on the same transaction.

Id. at 1147.

Howe differs from the instant case only by virtue of the fact that the debtors in Howe instituted pre-confirmation adversary proceedings against the creditor urging theories of recovery which were related to those later pursued post-confirmation. Here, the Eubankses did not bring any adversary proceedings against the Banks. We were careful to note in Howe, however, that a pre-confirmation adversary proceeding related to the issue later pursued is not a prerequisite for the application of res judicata:

> We do not intimate that whether an adversary proceeding preceded a confirmation hearing is a litmus test for determining whether the action is barred by res judicata, nor do we intimate that whether a proceeding sought to be given res judicata effect is an adversary proceeding or a contested matter is such a litmus test. The critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding. Whether the proceeding was an adversary proceeding or contested matter, however, may be an important factor in determining if the claim could or should have been effectively litigated in the earlier proceeding. Other important factors may include the nexus between the plan and the claim being asserted and the amount of time that has elapsed since the case commenced.

913 F.2d at 1146 n. 28. In this vein, the absence of a prior, related adversary proceeding was not fatal to the application of

15

res judicata in <u>Sure-Snap</u>.  There, the court noted that the adversary proceeding that was brought prior to confirmation was <u>not</u>, because of its limited scope, res judicata of the later lender liability claims.  948 F.2d at 874.  Rather, it was the confirmed plan itself (which failed to address material lender liability claims) that precluded the later action.  <u>Id.</u>

In the instant case, the Eubankses gave First City an allowed claim as a provision in the Plan.  It is uncontested that the claims the Eubankses now assert against the Banks were never listed on a schedule of assets, set forth in a disclosure statement or, in fact, brought to the attention of the bankruptcy court at any time.  The Eubankses contend that they failed to assert their claims or bring them to the attention of the bankruptcy court because they were unaware of them prior to the filing of the instant suit.  We find, as did the district court, that this profession of ignorance is simply false.  The Eubankses concede in their brief to this court that their claims against the Banks were discovered "within a matter of days or weeks prior to the final confirmation of the Chapter 11 plan of reorganization."  In various affidavits, the Eubankses and their counsel admit knowing of their claims against the Banks even earlier, indeed, by late 1989 or early 1990.  In any case, it is clear that the Eubankses knew of the claims prior to confirmation of their plan, yet failed to bring the claims, perhaps the most significant assets of their estate, to the attention of the bankruptcy court or their creditors as mandated by the Bankruptcy

Code and Rules.[4]  See also Sure-Snap, 948 F.2d at 873 (owners of debtor company had adequate information about prospective lender liability claims prior to commencement of confirmation proceedings, and it was therefore "clear that they could have brought these actions in the first instance") (emphasis in original).

The order confirming the Plan is therefore res judicata of the instant claims.  Accordingly, we agree with the district court that the instant claims against the Banks are barred.[5]

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Certainly, the Eubankses could have alerted the bankruptcy court to the lender liability claims pursuant to 11 U.S.C. § 1127, which provides, in relevant part, as follows:

> (a) The proponent of a plan may modify such plan at any time before confirmation . . . .  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

11 U.S.C. § 1127(a).

[5] The Eubankses on appeal do not differentiate between First City and FNJ as regards the application of res judicata except to point out that the February 12, 1990 district court lawsuit -- filed on the eve of confirmation of the Plan and subsequently dismissed -- was only against First City.  As we have seen, however, it is not the existence of the dismissed complaint that triggers the application of res judicata, but instead, the confirmation of the Plan, the absence of any reference in the Plan or related disclosure statements to claims against the Banks, and the allowance in the Plan of First City's claim.  We recognize that there may be distinctions between the two Banks with regard to the predicate for the invocation of res judicata. But in the absence of any argument by the Eubankses directed to those differences, we decline to address them.