# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2019

No. 18-40575

Lyle W. Cayce
Clerk

In the Matter of:  LINN ENERGY, L.L.C.; BERRY PETROLEUM COMPANY, L.L.C.; LINNCO, L.L.C.; LINN ACQUISITION COMPANY, L.L.C.; LINN ENERGY FINANCE CORPORATION; LINN ENERGY HOLDINGS, L.L.C.; LINN EXPLORATION & PRODUCTION MICHIGAN, L.L.C.; LINN EXPLORATION MIDCONTINENT, L.L.C.; LINN MIDSTREAM, L.L.C.; LINN MIDWEST ENERGY, L.L.C.; LINN OPERATING, INCORPORATED; MID-CONTINENT I, L.L.C.; MID-CONTINENT II, L.L.C.; MID-CONTINENT HOLDINGS I, L.L.C.; MID-CONTINENT HOLDINGS II, L.L.C.,

> Debtors

OKLAHOMA STATE TREASURER, Unclaimed Property Division,

> Appellee

v.

LINN OPERATING, INCORPORATED,

> Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The district court held that the bankruptcy court erred in dismissing a post-confirmation attempt by the Oklahoma State Treasurer ("Treasurer") to obtain the right to unclaimed royalty payments owed by the oil and gas debtor.

No. 18-40575

Because the Treasurer sat on its rights during the entire Chapter 11 process, res judicata bars its claim. We REVERSE the district court judgment and reinstate the bankruptcy court's DISMISSAL of the Treasurer's case.

## I. BACKGROUND

Linn Energy, LLC ("Linn") is an oil and gas company that operates in Texas and Oklahoma. In May 2016, Linn and fourteen affiliated entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court set a deadline requiring all "Proofs of Claims" from "[a]ll governmental units holding claims . . . that arose . . . prior to the Petition Date" to be filed by November 7, 2016. The Treasurer timely filed three proofs of claim on August 29 for "unknown/contingent" amounts, which it described as "unsecured." The Treasurer stated that it had filed the claim pursuant to Oklahoma's "unclaimed property law," and that it was "acting as a conservator or custodian on behalf of the classes of persons . . . who have failed to claim property owing to them for the statutory period of abandonment."

In November 2016, Linn filed a report with the Treasurer indicating that it possessed $956,212.72 in unclaimed property but did not transfer those assets to the Treasurer. The Treasurer contends that Linn was required by state law to deliver the unclaimed-property funds when it filed the report, but it did not then file an adversary complaint demanding that Linn turn over the funds. Significantly, on December 5, the Texas Comptroller filed an adversary complaint against Linn for unclaimed property owed to Texas residents after Linn disclosed $1.5 million in unclaimed-property holdings to that agency. *See* Complaint for Turnover and Payment of Unclaimed Property and Related Relief, *In re Linn Energy, LLC*, No. 16-06023 (Bankr. S.D. Tex. Dec. 5, 2016), ECF No. 1.

On December 19, Linn sent all claimants in the bankruptcy case—including the Treasurer and the Texas Comptroller—a ballot for voting on its

2

No. 18-40575

proposed Plan of Reorganization ("the Plan"). The Treasurer did not vote, but the Texas Comptroller filed an objection to confirmation because the Plan purported to distribute the unclaimed property assets of Texas residents, as unsecured assets, among parties other than the Comptroller.[1] On January 27, 2017, the bankruptcy court entered an order confirming the Plan, but the order expressly authorized the Texas Comptroller to pursue its claims for unclaimed property.

Several features of the Plan are critical here. First, a section titled "Preservation of Royalty and Working Interests" provided that "any right to payment from a Royalty and Working interest, if any, shall be treated as a Linn General Unsecured Claim under this Plan and shall be subject to any discharge and/or release provided hereunder." Second, the vesting clause stated that, except as otherwise provided in the Plan, "all property in each Estate, all Causes of Action, and any property acquired by any of the Linn Debtors pursuant to the Plan shall vest in [Linn], free and clear of all Liens, Claims, charges, Interests, or other encumbrances" once the Plan became final. Finally, the Plan's discharge provision stated that, pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise stated by the Plan, "the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date[ ] of Claims[,] . . . Interests, and Causes of Action of any nature whatsoever." That section of the Plan further enjoins any parties to the proceedings from commencing or continuing a claim related to the bankruptcy estate after the Plan received final approval.

---

[1] *See* Texas Comptroller of Public Accounts Objection to Confirmation of the Linn Plan [Dkt. No. 1333] and the Berry Plan [Dkt. No. 1390], *In re Linn Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. Jan. 17, 2017), ECF No. 1548.

3

No. 18-40575

All parties to the bankruptcy case had fourteen days in which to appeal the order, *see* Fed. R. Bankr. P. 8002, and on the final day of the appeal period, a group of claimants moved for reconsideration and relief from the order.[2] After the claimants agreed to a stipulation with Linn, the motion for reconsideration was withdrawn with prejudice on March 6.[3]  Thereafter, no claimant appealed the order or moved for reconsideration, and the confirmation became final on March 20.

About two months later, Linn objected to the Treasurer's proofs of claim for "unknown contingent" unclaimed property, asserting that it was not liable for such claims and that the Bankruptcy Code preempted state unclaimed property laws.  The Treasurer responded to the objection and then filed an adversary complaint against Linn.  The Treasurer asserted that Linn possessed, but did not own, $965,216.72 in unclaimed property consisting of investors' mineral royalties from Linn's Oklahoma oil and gas operations and that Linn was required by Oklahoma law to turn over the funds to the Treasurer.

Linn moved to dismiss the Treasurer's adversary complaint pursuant to Bankruptcy Rule 7012(b)(6), analogous to Fed. R. Civ. P. 12(b)(6), asserting that the claim violated the Plan's injunction, vesting, and discharge provisions and was barred by the principles of res judicata and preemption.  The Treasurer re-emphasized that the unclaimed property never belonged to Linn.

---

[2] *See* James H. Niven's, Charles E. Hinkle's, and Bianchi Family Ltd. Partnership's Motion for Reconsideration of Purported Disallowance of Claims; Relief from the Confirmation Order; or, in the Alterative, to Alter or Amend Cure Amount in the Confirmation Order, *In re Linn Energy, LLC*, No. 16-60040 (Bankr. S.D. Tex. Feb. 10, 2017), ECF No. 1691.

[3] *See* Stipulation and Agreed Order Between Debtors James H. Niven, Charles E. Hinkle, and Bianchi Family Ltd. Partnership, *In re Linn, LLC*, No. 16-60040 (Bankr. S.D. Tex. Mar. 6, 2017), ECF No. 1779.

No. 18-40575

Consequently, it never became part of the bankruptcy estate and could not be governed by the Plan. After a hearing, the bankruptcy court sided with Linn. Granting the motion to dismiss, the court concluded that the Treasurer had "received more than adequate due process," and that its complaint amounted to a prohibited "collateral attack" on the confirmed Plan.

The Treasurer appealed to the district court, which reversed the bankruptcy court's dismissal on the grounds that the unclaimed property never became part of the bankruptcy estate, and therefore the bankruptcy court did not have jurisdiction to adjudicate its status. Linn moved for rehearing, but the district court denied the motion. Linn timely appealed.

## II. STANDARD OF REVIEW

This court reviews "the decision of a district court sitting as an appellate court in a bankruptcy case by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Lopez*, 897 F.3d 663, 668 (5th Cir. 2018) (internal quotation marks and citations omitted). As such, this court acts "as a second review court" and reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *Id.* (internal quotation marks and citations omitted).

## III. DISCUSSION

Linn advances four arguments challenging the district court's decision. First, Linn argues that, contrary to the district court's determination, the unclaimed property is part of the bankruptcy estate and subject to the Plan.[4]

---

[4] The Treasurer spends a significant portion of its brief asserting that Linn waived this argument because, allegedly, Linn did not raise the issue until its motion for rehearing in the district court. That argument is belied both by Linn's briefs and by the Treasurer's own briefs in the bankruptcy court. In response to Linn's motion to dismiss the Treasurer's adversary complaint, for example, the Treasurer argued that judicial estoppel should prevent Linn from claiming that the unclaimed property was part of the bankruptcy estate because

No. 18-40575

Second, Linn argues that the bankruptcy court correctly determined that the Plan and ensuing Confirmation Order constitute a final judgment that the Treasurer may not collaterally attack, and that the principles of res judicata bar the Treasurer's untimely adverse complaint. Third, Linn argues that the Treasurer had no "right to payment" under Oklahoma's unclaimed property laws as of the date of the bankruptcy petition and, therefore, the Bankruptcy Code barred the Treasurer's claims. Finally, Linn argues that, to the extent that the Bankruptcy Code and Oklahoma's unclaimed property law are in tension with one another, the Bankruptcy Code preempts Oklahoma state law.

This court need not address the merits of Linn's first, third, and fourth arguments because Linn's second argument is correct—the bankruptcy court's approval of the Plan and the ensuing confirmation order constitute a final judgment that may not be collaterally attacked.

In *Travelers Indemnity Co. v. Bailey*, the Supreme Court held that final bankruptcy orders (*i.e.*, orders that are affirmed upon direct review, or, as in this case, not appealed or contested) become "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." 557 U.S. 137, 152, 129 S. Ct. 2195, 2205 (2009) (internal quotation marks and citation omitted). The Court explicitly held that this principle applies "whether or not [the orders were] proper exercises of bankruptcy court jurisdiction and power" at the time they became final. *Id.*

---

"only after" the bankruptcy court entered the confirmation order "did [Linn] change positions and claim that the Admitted Unclaimed Property is property of the estate." Whatever the history of Linn's positions in the bankruptcy proceedings before the final order was entered, it is clear that Linn has argued from the outset in this litigation that the unclaimed property funds were property of the bankruptcy estate. Accordingly, the argument is not waived.

Thus, when parties to a bankruptcy case have been given "a fair chance to challenge [a] [b]ankruptcy [c]ourt's subject-matter jurisdiction" or a provision of a plan approved by the bankruptcy court during the case and fail to do so, they cannot challenge the court's order later through a collateral attack. *Id.* at 153, 129 S. Ct. at 2206. This court has repeatedly recognized the collateral bar established by *Travelers*. *See, e.g.*, *In re Davis Offshore, L.P.*, 644 F.3d 259, 265 (5th Cir. 2011) ("*Travelers* held that a bankruptcy court's plan confirmation order cannot, after it becomes final, be collaterally attacked by parties to the case or those in privity with them on grounds that it exceeded the bankruptcy court's jurisdiction.").

Here, the Plan submitted by Linn to claimants clearly stated that unclaimed mineral royalties would be treated as unsecured debt, that upon the Plan's approval all remaining property would vest in Linn, and that no parties could bring further claims against Linn after the Plan became final. Despite ample opportunity provided by the Bankruptcy Code and the court's procedures, the Treasurer neither voted on the Plan nor contested its treatment of the unclaimed property in question. That the Treasurer had a fair chance to challenge the Plan's disposition of unclaimed property in Oklahoma is highlighted by the fact that a similarly-situated party, the Texas Comptroller, did object to the Plan's treatment of unclaimed property in Texas and successfully excluded that property from the Plan.

The Treasurer cites *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 135–36, 83 S. Ct. 232, 234 (1962), which held that the former Bankruptcy Act does not permit bankruptcy trustees to distribute the property of other persons. While that proposition is sound as a general principle, the Treasurer's reliance on *Pearlman* in this case is misplaced. *Pearlman* evaluated the legality of a bankruptcy plan on direct review; here, the Treasurer had an opportunity to challenge the Plan in the normal course of proceedings (as the

No. 18-40575

Texas Comptroller did) but did not avail itself of that opportunity. *Travelers*, decided decades after *Pearlman*, explicitly precludes collateral attacks on final bankruptcy orders by parties to the proceedings "whether or not [they] were proper exercises of bankruptcy court jurisdiction and power" in the first instance.[5] 557 U.S. at 152, 129 S. Ct. at 2205. To hold otherwise would upend the need for finality in the judicial system, because "this sort of collateral attack cannot be squared with res judicata and the practical necessity served by that rule. It is just as important that there should be a place to end as that there should be a place to begin litigation." *Id.* at 154, 129 S. Ct. at 2206 (internal quotation marks and citation omitted).

In short, the Treasurer asks this court to "tunnel back" into a completed proceeding "for the purposes of reassessing prior jurisdiction de novo." *Id.* (internal quotation marks and citation omitted). We decline to do so. Because the Treasurer failed to participate in the bankruptcy case and object to or appeal the Plan's disposition of the Oklahoma unclaimed property in the normal course, its challenge is too late now. The bankruptcy court's dismissal of the Treasurer's adversary complaint based on res judicata was correct

## IV. CONCLUSION

For the foregoing reasons, this court **REVERSES** the district court's reversal of the judgment entered by the bankruptcy court. The bankruptcy court's decision to **DISMISS** the Treasurer's complaint is reinstated.

---

[5] This court has no occasion to rule on the propriety of the bankruptcy plan to the extent it purported to distribute unclaimed property that the debtor held as a trustee for others, but as the treatment of the Texas unclaimed property rights demonstrates, there is reason for skepticism.