# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 12, 2021

Lyle W. Cayce
Clerk

No. 19-30795

In the Matter of: Richard LaHaye; Cindy LaHaye

*Debtors*,

New Falls Corporation,

*Appellant*,

*versus*

Richard LaHaye; Cindy LaHaye,

*Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 6:18-CV-675 and 6:18-CV-1093

Before Elrod, Southwick, and Costa, *Circuit Judges.*
Gregg Costa, *Circuit Judge*:

A grocery went bankrupt. One of the store's creditors filed a proof of claim for about $325,000, the balance on a loan it had made to the grocery. In the business's Chapter 11 plan, the bankruptcy court awarded the creditor the grocery store and the land where it was located. The court assessed the value of this property at $225,000. The plan thus reduced the outstanding balance on the loan to $100,000. The couple who owned the grocery business had guaranteed the loan, so they remained liable but only for the remaining balance.

Soon after the business's bankruptcy case ended, the couple filed for personal bankruptcy. The creditor again filed a proof of claim for the entire debt. It argued that the $225,000 credit against the guaranteed loans should not apply in the owners' personal bankruptcy, as the store had not yet been transferred. Plus, the vacant property had declined in value.

The question is whether the terms of the first bankruptcy are binding in the second. We conclude that they are. Under section 1141(a) of the Bankruptcy Code, the provisions of a confirmed bankruptcy plan bind both the debtor and its creditors. As a result, this creditor is bound by the provision of the first bankruptcy plan awarding it the grocery store in exchange for a fixed-value credit against the guaranteed debt.

## I.

Richard and Cindy LaHaye owned LaHaye Enterprises, LLC, a small grocery business in rural Louisiana. In 2011 and 2012, the LLC took out loans from Regions Bank totaling $340,805. The LaHayes personally guaranteed the loans, making them jointly and severally liable for the loan obligations. To further secure the loans, they executed a single mortgage encumbering two real properties—a retail space owned solely by the LLC ("the Grocery Store") and a home owned solely by the LaHayes ("the Ventress House").

No. 19-30795

Soon after the LLC obtained the loans, a national grocery chain came to town and drove the LLC's one store out of business. The LaHayes attempted to satisfy the LLC's outstanding debts by transferring its assets to Regions Bank. But the bank ignored their efforts and, in 2015, sold the loans and the attached mortgage to New Falls. The LLC filed for Chapter 11 bankruptcy later that year.

New Falls asserted a claim against the LLC's bankruptcy estate for the outstanding balance on the loans—at that time, about $326,000. In June 2016, the bankruptcy court confirmed a Chapter 11 plan, in which the LLC agreed to surrender the Grocery Store and all of its contents to New Falls in exchange for a roughly $225,000 credit. That credit reduced the balance on the loan to $100,000. The plan further provided that the LaHayes would make monthly payments against the $100,000 in unsecured debt and would be entitled to a partial release of liability for the rest.

Things did not go according to plan. In October 2016, New Falls foreclosed on the mortgage encumbering the Grocery Store and the Ventress House and sought to liquidate both properties. To prevent the sale of the Ventress House, the LaHayes (as individuals) immediately filed for Chapter 11 bankruptcy. That stalled the sale of the Grocery Store too, and the vacant storefront sat idle, declining in value.[1]

New Falls asserted an even larger claim in the LaHayes' personal bankruptcy, seeking to recover the full balance of the LLC's debt plus

---

[1] The parties disagree as to who should be blamed for the fact that the Grocery Store was never transferred. New Falls maintains that the LaHayes' bankruptcy prevented it from completing its foreclosure on the property. But the LaHayes point out that New Falls could have removed the Ventress House from its foreclosure petition and sold the store on its own. The LaHayes also contend that they repeatedly offered to transfer the Grocery Store outright during their personal bankruptcy, and still, New Falls declined to accept it.

accrued interest.  The LaHayes objected, arguing that New Falls was bound by the provisions of the first bankruptcy plan—including the $225,000 credit and partial release of liability.  New Falls agreed that it was bound by the plan but only with respect to the debtor, not its guarantors.  In New Falls' view, the LaHayes remained severally liable for the entire debt and could not indirectly benefit from the credit to the LLC until the LLC's assets passed to New Falls through either sale or transfer of title.

The bankruptcy court disagreed with New Falls and sustained the LaHayes' objection.  It held that, under 11 U.S.C. § 1141, the first bankruptcy plan bound the creditor in subsequent proceedings involving the same debt, even before the assets were transferred.  The court subsequently applied the credit and reduced New Falls' claim against the LaHayes' bankruptcy estate to the $100,000 left unsecured by the first plan.

New Falls appealed the bankruptcy court orders sustaining the LaHayes' objection and confirming their individual bankruptcy plan.  The district court upheld both rulings.  It found that the extent of the LaHayes' personal liability was "specifically addressed" by the first bankruptcy plan, so *res judicata* barred New Falls from relitigating the issue in the second bankruptcy.

An appeal to this court followed.  Although New Falls appeals both the order sustaining the LaHayes' objection to its claim and the order confirming the plan in the personal bankruptcy, the outcome of the latter appeal depends entirely on the success of the former.  The question before us, then, is whether the LLC's bankruptcy plan fixed the value of New Falls' claim against the LaHayes in their personal bankruptcy.

## II.

New Falls offers two reasons why the LLC's bankruptcy plan should have no bearing on its claim in the LaHayes' personal bankruptcy.  First, New

Falls maintains that the plan premised the credit against the debt on New Falls' obtaining ownership of the Grocery Store. The Store has not been transferred yet so, in New Falls' view, the LaHayes are still responsible for the entire debt. Next, even if the plan attempted to reduce the LaHayes' liability as of the confirmation date, New Falls argues that provision would be ineffective because a bankruptcy plan cannot bind a creditor with respect to its claims against third-party guarantors. We disagree on both fronts.

## A.

Unless stated otherwise, a bankruptcy plan takes effect upon confirmation. 11 U.S.C. § 1141. Recourse to that default rule is not necessary here, however, because the LLC's plan cites confirmation as the event that triggers a reduction in the amount the LaHayes owe New Falls.

The LLC's bankruptcy plan says that:

The LaHayes shall be entitled to a partial release of the guaranties of the New Falls debt upon confirmation of this plan in an amount equal to the value of the property surrendered under the Plan. The LaHayes shall thereafter be liable only for the remaining balance of $100,000.00 as provided for above.

This language seems clear. "Upon confirmation" of the plan, the LLC surrendered the Grocery Store and the LaHayes received a partial release of liability. The release was not predicated on New Falls' first obtaining the surrendered property. Rather, confirmation triggered both conditions— surrender and release.

New Falls argues that the plan, when read as a whole, requires something more than confirmation to trigger the release. It points to another term, which provides that confirmation will "allow the Debtor and New Falls to engage in such transactions as are necessary to carry out the provisions of the plan . . . and the transfer of any assets or to allow New Falls to foreclose

it[s] mortgage on property owned by the Debtor." New Falls reads this to mean that certain "transactions" would need to occur before the release could take effect. Specifically, "no credit would be due until the parties either reached an agreement to transfer the property to New Falls, or New Falls completed its foreclosure proceeding."

But the provision that New Falls relies on does not qualify the LaHayes' release of liability. It appears on a different page of the plan and does not even mention the release. Instead it lifts the automatic stay that barred New Falls from foreclosing on the LLC's assets during the bankruptcy proceedings. Moreover, nothing in the provision suggests that the LaHayes bear the burden of ensuring that New Falls receives the surrendered property. By cancelling the stay, the plan permits New Falls to pursue the property, either by negotiating transfer with the LaHayes or foreclosing on the mortgage. This provision shows that the bankruptcy court understood that the Grocery Store was not yet in New Falls' hands, yet it still made the release operative "upon confirmation."

Reading the plan as a whole, we find no indication that the LaHayes' release of liability is conditional. The plan divides the New Falls debt between the LLC and the LaHayes, giving them separate responsibilities: (1) the LLC satisfies the secured portion by turning over the Grocery Store and (2) the LaHayes satisfy the unsecured portion by making monthly payments over 20 years. If these obligations only took effect once the Grocery Store was transferred, New Falls could upend the arrangement by ignoring the LLC's obligation and going after the LaHayes for the entire debt. We do not believe the bankruptcy court intended to let New Falls determine the extent of the LaHayes' personal liability. The only reasonable interpretation of the plan is thus the manifest one: "The LaHayes [became] entitled to a partial release of the guaranties of the New Falls debt upon confirmation."

**B.**

Having determined that the plan purports to reduce the LaHayes' liability on the New Falls debt to $100,000, the next question is whether that term has binding effect beyond the LLC's bankruptcy. New Falls contends that a confirmed bankruptcy plan, albeit binding on the debtor, cannot bind a creditor with respect to its claims against third-party guarantors. If correct, this argument would mean the release from the LLC's bankruptcy has no practical effect in the LaHayes' personal bankruptcy. Again, we disagree.

Under the Bankruptcy Code, the "provisions of a confirmed plan bind the debtor . . . and any creditor." 11 U.S.C. § 1141(a). Based on this provision, we have long understood a confirmed bankruptcy plan to have binding effect on subsequent proceedings that involve the same debt. *See Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992); *Miller v. Meinhard-Com. Corp.*, 462 F.2d 358, 360 (5th Cir. 1972); *In re Constructors of Fla., Inc.*, 349 F.2d 595, 599 (5th Cir. 1965). This binding effect extends to third parties. Indeed, a confirmation order binds every entity that holds a claim or interest in the planned reorganization, regardless of whether they assert those interests before the bankruptcy court. *See Eubanks*, 977 F.2d at 170.

That being said, the "discharge of a debt of the debtor does not affect the liability of any other entity" for the debt 11 U.S.C. § 524(e). A debtor's bankruptcy plan generally does not discharge its guarantors' obligations, even if the plan reduces or restructures the debt itself. *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989); *United States v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 223–24 (5th Cir. 1984). After all, the reason a lender obtains a guaranty is to guard against the risk that the borrower will not repay the loan. If a borrower's insolvency discharged even a guarantor's liability, the guaranty would lose much of its force.

But discharge is not the issue here. The LLC's bankruptcy plan does not discharge the New Falls debt or the LaHayes' obligations under it. To

the contrary, the plan provides that the LaHayes' guarantees and mortgage "shall remain in force until the New Falls debt is paid in full." The provision granting the LaHayes a partial release of liability for the secured portion of the debt is not a discharge. Rather, it requires New Falls to recover the secured debt from an asset—the Grocery Store—that is part of the LLC's estate. The guarantee remains, with the LaHayes still owing the leftover balance.[2]

This is not the first time we have recognized the distinction between erasing a guaranty (impermissible) and reducing a guarantor's liability by ordering a debtor to surrender assets in satisfaction of the debt (permissible). *See Stribling*, 734 F.2d at 223; *Sandy Ridge*, 881 F.2d at 1354; *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994). In *Stribling*, for example, the debtor's bankruptcy plan did not discharge a guaranty; instead, it ordered asset transfers and payments that reduced the debt and, in tandem, the guarantors' liability. 734 F.2d at 224 (explaining that the guarantors' liability was "subject to credit for amounts paid on this debt by or on behalf of the corporate obligor"). Applying the same logic, in *Sandy Ridge*, we approved a proposed Chapter 11 plan similar to the LLC's. That debtor also offered to surrender some of its real estate in exchange "for a 'credit on the indebtedness.'" *Sandy Ridge*, 881 F.2d at 1349. The bankruptcy court rejected the plan due, in part, to its concern that the credit would release the debtor's guarantors from liability. *Id.* at 1350–51. We reversed, explaining that the proposed plan would not "operate to release the nondebtor

---

[2] Accordingly, we need not address New Falls' argument that the mortgage encumbering the Ventress House is subject to independent, *in rem* liability—unaltered by the LaHayes' *in personam* release. We do not doubt that the mortgage is still effective. Nothing in the LLC's bankruptcy plan prevents New Falls from seeking to repossess the Ventress House should the LaHayes default on the outstanding balance.

guarantors." *Id.* at 1351. The surrendered assets would satisfy the secured portion of the claim and, with the guaranty still in existence, the creditor "would then be able to pursue the guarantors" for the remaining unsecured sum (the total debt minus the credit). *Id.* at 1354; *see also Johnson*, 11 F.3d at 1266; *R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 490 n.3, 494 (5th Cir. 1976) (both distinguishing discharge of guaranty from payments that reduce the underlying debt). The LLC's plan operates the same way.

A simple way to frame the difference between discharging a debt and crediting an asset against its balance is to imagine that the bankruptcy court had ordered the LLC to turn over cash instead of real estate. No one would view an order requiring the LLC's estate to pay New Falls $250,000 in cash as eliminating a guaranty. It would be a payment that reduced the debt—and thus the guarantee—to a $100,000 balance. The fact that the provision at issue contemplates an exchange of real property rather than cash does not make it any less binding. *See Sandy Ridge*, 881 F.2d at 1351.

A bankruptcy plan, then, can limit a creditor's claim against third-party guarantors—not by discharging the guaranty but by determining the source and value of payments satisfying the guaranteed debt. Indeed, the bankruptcy court has broad discretion to determine how a debt will be settled, including through the sale or transfer of "all or any part of the property of the [bankrupt entity's] estate." *See* 11 U.S.C. § 1123(a)(5)(A)–(D).

Nonetheless, New Falls has refused the form of recovery provided by the LLC's bankruptcy plan, in hopes that a claim against the LaHayes might yield a better outcome. This is where the preclusive aspect of section 1141 kicks in. In providing that "the provisions of a confirmed plan bind the debtor . . . and any creditor," 11 U.S.C. § 1141(a), section 1141 is a statutory

bar on relitigation akin to common law preclusion doctrines.[3]  *See* 8 COLLIER ON BANKRUPTCY § 1141.02 (16th ed. 2021) ("Section 1141(a) of the Code provides that a confirmed chapter 11 plan is binding upon a broad list of entities.").  Like traditional *res judicata*, section 1141(a) provides that "a confirmed plan precludes parties from raising claims or issues that they could have or should have raised before confirmation." *Id.*  That is what New Falls is trying to do here.

New Falls' appeal is a collateral attack on the LLC bankruptcy plan's disposition of the secured debt.  *See In re Linn Energy*, 927 F.3d 862, 867 (5th Cir. 2019).  New Falls argues that the LaHayes should remain liable for that debt until the Grocery Store is transferred.  But as we have said, the plan did not make transfer a condition of the LaHayes' release.  If New Falls thought that transfer should have been the triggering event, it had every opportunity to ask for that in the LLC's bankruptcy.  In any event, there is nothing

---

[3] The relationship between section 1141 and *res judicata* is not entirely clear.  We have treated the two as separate but somewhat overlapping doctrines. *Eubanks*, 977 F.2d at 170*; see also* 8 COLLIER § 1141.02 (focusing on *res judicata* only in one of five subsections addressing section 1141(a)).  In *Eubanks*, for example, we cited section 1141 in finding that a confirmed bankruptcy plan is equivalent to a final order for preclusion purposes but proceeded to also consider the other *res judicata* factors.  977 F.2d at 169.  Despite section 1141's finality command, consideration of traditional *res judicata* elements may still be required for due process purposes, especially when section 1141 is being applied against a party that did not litigate in the underlying bankruptcy.  *See* 8 COLLIER §§ 1141.02, 1141.06 (noting constitutional limits on application of Code against creditor that did not receive notice).  Indeed, the Supreme Court applied *res judicata* rather than the Code when considering whether a confirmed plan's release of tort claims against a third party bound plaintiffs who sued the released party years later.  *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009).

To the extent our caselaw requires consideration of the preclusion elements even when, as here, the party seeking to relitigate appeared in the original bankruptcy, *see Eubanks*, 977 F.2d at 169, this case meets those criteria.  Issue preclusion applies because New Falls had a full opportunity to, and did in fact, litigate the same issue it is raising in this appeal: the valuation and distribution of the Grocery Store in the LLC's bankruptcy.  *See Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009).

unusual about crediting a debt based on a postconfirmation transfer. The proposal we approved in *Sandy Ridge* credited a property that would be transferred after confirmation. *See* 881 F.2d at 1348. The same would be true of a plan ordering the LLC to pay cash. In either case, upon confirmation of the plan, the debtor would be obligated to timely transfer the assets corresponding to the credit, and the creditor would be bound to receive them. Any postconfirmation default in the debtor's performance would not void the credit but would instead give rise to a new and separate claim against the debtor for noncompliance with the plan. *See In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 866 (Bankr. W.D. Tex. 2008) ("[P]re-petition debts are discharged by confirmation, displaced (and replaced) by the Plan's treatment of those debts, and will not be revived by any post-confirmation default in plan payments."); *In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992).

New Falls cannot undo the LLC bankruptcy's valuation of the Grocery Store either. A reduction in the value of that property seems to be what is keeping this litigation going.[4] Since 2016, the property has sat abandoned and its value has sharply declined. As New Falls told the district court: "We don't really want it." But it was not the judiciary's decision to have the Grocery Store secure the LLC's debt. New Falls purchased the LLC's debt, knowing the Grocery Store was attached as collateral. It is hard to see what viable grounds New Falls would have to object to the LLC's surrender of the store as partial settlement of the debt. But regardless of the chances of such an objection, the LLC bankruptcy was the place to make it. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987); *In re Linn Energy*, 927 F.3d at 867.

---

[4] Notably, the bankruptcy court's valuation of the store stemmed from the value stated in New Falls' own proof of claim.

We recognize that fixing the value of surrendered assets at the time of confirmation subjects creditors to the risk that the assets may decrease in value before they are transferred. *See Sandy Ridge*, 881 F.2d at 1354 (holding that a bankruptcy court may value real estate rather than wait to see the price of a foreclosure sale). Yet that valuation is "an integral part of the bankruptcy process." *Id.* And the risk swings both ways. In the years since the LLC plan was confirmed, the Store's value could have increased, due to a new highway nearby or foot traffic from new businesses. In that situation, the 2015 valuation would still bind both parties and New Falls would enjoy the benefit of the postconfirmation price fluctuation.

Under section 1141, New Falls is bound by the provision of the LLC's confirmed bankruptcy plan, which requires it to accept the Grocery Store in exchange for a fixed-value credit against the secured debt. New Falls cannot use the LaHayes' personal bankruptcy to relitigate those issues.

* * *

We AFFIRM the judgment of the district court.